UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 07-123-JBC

VIRGIL R. MASTERS,                                                                                    PLAINTIFF,

V.                               MEMORANDUM OPINION AND ORDER

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,                                            DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of his application for disability insurance benefits (DE 4, DE 5).  The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

I.     Overview of the Process

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs*., 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs*., 25

F.3d 284, 286 (6th Cir. 1994). The court does not try the case de novo or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II.    The ALJ's Determination**

The plaintiff is a thirty-nine-year-old male who completed the tenth grade and has past relevant work experience as a laborer, concrete truck driver, materials handler, forklift operator, and a handler and delivery driver for a food service company. AR 324-25. He alleges disability beginning on September 19, 2002,

due to back problems. AR 68. He filed an application for a period of disability and Disability Insurance Benefits ("DIB") on February 24, 2003, which was denied initially and on reconsideration. AR 343. A hearing was held on August 4, 2004, after which, on September 2, 2004, Administrative Law Judge ("ALJ") Gregory O. Varo determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. AR 26. The Appeals Council declined to review the ALJ's decision (AR 9-11), and plaintiff appealed to this court. AR 343. The court remanded the case for the ALJ to consider the plaintiff's marginal education. AR 365. After a new hearing on October 4, 2006, the ALJ again determined that the plaintiff had not been under a disability from September 19, 2003, through the date of his decision on November 13, 2004. AR 343-347. At Step 1, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 25.[1] At Step 2, the ALJ found that the plaintiff has severe impairments including status-post fusion at L4-5 and L5-S1, borderline intellectual functioning and obesity. AR 346. At Step 3, the ALJ determined that the plaintiff's impairments did not meet or equal a listing in the Listing of Impairments. AR 25. At Step 4, the ALJ found that the plaintiff is unable to perform any of his past relevant work (AR 25) and has no transferable skills from such work. AR 346. Finally, at Step 5, the ALJ found that with the plaintiff's residual functional capacity ("RFC"), jobs that the plaintiff can perform exist in a significant number in

---

[1] The ALJ took administrative notice of the findings and conclusions appearing in the record through the date of the prior decision except where they conflicted with the findings and conclusions of law in the most recent decision. AR 345.

the national economy; the ALJ therefore denied the plaintiff's claim for DIB. AR 346-347. The plaintiff appealed once more to the Appeals Council, the appeal was denied, and he appealed once again to this court.

## III. Legal Analysis

The plaintiff contends that the ALJ's decision that the plaintiff can perform a significant number of jobs in the national economy is not supported by substantial evidence based on two vocational errors. Specifically, the plaintiff argues the ALJ erred when he did not carry out his duty under Social Security Ruling ("SSR") 00-4p to inquire of the vocational expert ("VE") how her testimony differed from the Dictionary of Occupational Titles ("DOT"). Further, the plaintiff argues that the ALJ failed to note and to evaluate the reliability of the VE's testimony with regard to the number of jobs available. The court will look at each argument in turn.

### A. Consistency with Dictionary of Occupational Titles

SSR 00-4p requires that the adjudicator inquire, on the record, about whether the VE's evidence is consistent with the DOT. Generally, the VE's occupational evidence should be consistent with the occupational information that the DOT provides. *Id.* If the VE's evidence appears to conflict with the DOT, the ALJ should obtain a reasonable explanation for the apparent conflict. *Id.*

The plaintiff correctly contends that the ALJ clearly failed in his affirmative duty to inquire, on the record, whether the VE's testimony was consistent with the DOT. However, that error could be harmless and, therefore, not require a remand if

4

the court can determine that there was no actual conflict between the VE's testimony and the DOT. An error is harmless where it has no bearing on the procedure used or the substance of the ultimate decision. *United States Steel Corp. v. Envtl. Prot. Agency,* 595 F.2d 207 (5th Cir. 1979). The Sixth Circuit has found that the harmless-error rule applies in the Social Security context. *See e.g. Heston v. Comm'r of Social Security,* 245 F.3d 528, 535 (6th Cir. 2001) (failure to explain weight given to treating physician not reversible error where ALJ's opinion is nonetheless supported by substantial evidence and error was harmless.). The failure to strictly abide by the guidelines in SSR 00-4p does not necessitate reversal where the ALJ's opinion is supported by substantial evidence and the error was harmless. While the plaintiff argues that this error requires a reversal of the denial decision,[2] the court does not find any conflict between the VE's testimony and the DOT.

      The plaintiff maintains that the ALJ's error is not harmless, as there are differences in the way the jobs are classified in the DOT and his abilities with regard to his reading levels and his ability to follow detailed instructions, which are required on many of the jobs listed by the VE. To begin, this court has previously addressed the plaintiff's contention that he is illiterate, and it determined that he is not illiterate under the Social Security Act. AR 363. Instead, this court found that

---

[2] The plaintiff cites *Teverbaugh v. Commissioner*, 258 F. Supp. 2d 702 (E.D. Mich. 2003) in support of his argument. However, that case is distinguishable, as the VE's testimony was not supported by the DOT, and the VE even failed to provide DOT codes. In the present case, the VE did provide DOT codes.

the "plaintiff is properly characterized as having a marginal education."  AR 364.  "Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education."  20 C.F.R. § 404.1564.  By virtue of his marginal education, the plaintiff is limited to jobs classified as unskilled, which have a specific vocational preparation ("SVP")[3] of 1 or 2.  SSR 00-4p.  The VE testified that, with the limitations outlined by the ALJ, a person could work in assembly jobs and inspecting jobs.  Further, the VE provided job codes for such positions, and those jobs have an SVP of 2.  *See, e.g.,* DOT 669.687-014  DOWEL INSPECTOR; DOT 716.687-030 LENS-BLOCK GAUGER; DOT 222.687-014 GARMENT SORTER; DOT 521.687-094 PEELED-POTATO INSPECTOR.  Thus, the VE testimony is not in conflict with the DOT in regard to positions involving an SVP level of 2, which corresponds to the plaintiff's "marginal education."

The plaintiff also contends that an inconsistency exists between the VE's testimony listing DOT jobs with a reasoning level of 2, which require an ability to deal with detailed instructions, and the ALJ's RFC assessment, which limited the plaintiff to simple tasks.[4]  Although some jobs listed by the VE require a reasoning

---

[3]SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  DOT Appendix C.

[4] Specifically, the ALJ asked the VE to consider a person who "is limited to simple, repetitive tasks."  AR 480.

level of 2,[5] other jobs require only a reasoning level of 1.[6]  Thus, the VE did describe jobs with simple instructions.  Further, although a reasoning level of 2 may require detailed but uninvolved written or oral instructions, detailed *instructions* do not constitute an inconsistency with the ALJ's RFC assessment which limits the plaintiff to simple *tasks*.  As discussed, the plaintiff is limited to "unskilled work."  "Unskilled work is work which needs little or no judgment to do *simple* duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568 (emphasis added).  Therefore, a limitation to simple duties is already presumed within the "unskilled" limitation, and a finding that a plaintiff is capable of applying "commonsense understanding to carry out detailed but uninvolved written or oral instructions" appears consistent with the RFC to perform simple tasks.  DOT Appendix C.[7]

For these reasons, the VE's testimony does not conflict with the DOT, and the ALJ's determination is supported by substantial evidence.  Therefore, the ALJ's failure to ask the VE whether the evidence she presented was consistent with the information contained in the DOT was harmless error.

---

[5] *See* DOT 716.687-030 LENS-BLOCK GAUGER (Reasoning: Level 2 - Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.).

[6] DOT 669.687-014 DOWEL INSPECTOR; 521.687-094 PEELED-POTATO INSPECTOR (Reasoning: Level 1 - Apply commonsense understanding to carry out simple one- or two-step instructions.).

[7] Additionally, SSR 00-4p clarifies that "the DOT lists maximum requirements of occupations as generally performed."

**B. Reliability of Vocational Expert**

The plaintiff also contends that the ALJ failed to note and to evaluate the reliability of the VE's testimony with regard to the number of jobs she listed under 20 C.F.R. § 404.1566, as the VE was unable to provide job figures for a particular industry and was unsure if certain industries existed in Kentucky. The regulation provides:

> work exists in the national economy where there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy."

20 C.F.R. § 404.1566(b). The VE testified that given the plaintiff's limitations, he "would be able to perform the requirements of representative occupations such as assembly, numbering 8,600 sedentary and light jobs in the state and 608,000 in the national economy and checking/inspecting sedentary and light jobs, numbering 5,400 in the state and 702,000 in the national economy." AR 347. These numbers satisfied the ALJ's burden in showing the existence of a significant number of jobs in the national economy that the plaintiff could perform. *See Harmon v. Apfel,* 168 F.3d 289 (6th Cir. 1999) (finding 700,000 in national economy is significant number); *McCormick v. Sec'y of Health and Human Servs.,* 861 F.2d 998 (6th Cir. 1988) (finding 4,000 and 5,000 jobs in Michigan to be significant number of jobs); *Hall v. Bowen,* 837 F.2d 272 (6th Cir. 1988) (1,350 jobs in the nine-county Dayton, Ohio, area was "significant number"). Further, the

VE's testimony was in response to a hypothetical question that set forth the plaintiff's limitations, which the plaintiff does not challenge. Thus, the ALJ properly relied on the VE's testimony. *See Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777 (6th Cir. 1987) ("substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only if the question accurately portrays plaintiff's individual physical and mental impairments.").

Further, the Sixth Circuit does not require remand merely if an ALJ fails to probe the reliability of a VE. *See Hall v. Bowen,* 837 F.2d 272.[8] Rather, reliability of the VE's testimony is just one factor the ALJ may consider. "In determining whether the jobs identified are limited and isolated the factors to be considered include the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Harmon v. Apfel,* 168 F.3d 289, 292 (6th Cir. 1999)(citing *Hall,* 837 F.2d 272). The Social Security Act, "its legislative history, and the regulations make it clear that the test is whether work exists in the national economy." *Id.*

---

[8] The plaintiff cites *McKinnie v. Commissioner,* 368 F.3d 907 (7th Cir. 2004), in support of his argument that the ALJ's failure to inquire into reliability requires remand. Because reliability is a factor only in the Sixth Circuit, Seventh Circuit authority is merely persuasive, and is contrary to the holdings of the Sixth Circuit.

The court finds that there is substantial evidence for the ALJ's conclusion that the plaintiff could perform a significant number of jobs in the national economy, and any failure of the ALJ to mention the VE's reliability does not alter that finding.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment (DE 4) is **DENIED.**

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave to file a reply brief (DE 7) is **GRANTED.**

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (DE 5) is **GRANTED.**

Signed on   August 28, 2008

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY